UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MUHAMADOU DRAMMEH,<br><br>                              Petitioner,<br><br>v.<br><br>KRISTI NOEM, Secretary of the Department of Homeland Security, et al.,<br><br>                              Respondents. | Case No.: 25-CV-3412 JLS (JLB)<br><br>**ORDER GRANTING FIRST AMENDED PETITION FOR WRIT OF HABEAS CORPUS**<br><br>(ECF No. 5) |

    Presently before the Court is Petitioner Muhamadou Drammeh's First Amended Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241 ("Pet.," ECF No. 5). Also before the Court is Respondents Kristi Noem's (Secretary of the U.S. Department of Homeland Security), Pamela Bondi's (Attorney General of the United States), Todd Lyons's (Acting Director of Immigration Customs Enforcement), Jesus Rocha's (Acting Field Director, San Diego Field Office), and Christopher LaRose's (Senior Warden of Otay Mesa Detention Center) (collectively, "Respondents") Return in Opposition to the Habeas Petition ("Ret.," ECF No. 13), and Petitioner's Traverse ("Traverse," ECF No. 14). *See generally* Docket. For the reasons set forth below, the Court **GRANTS** Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 5).

/ / /

## BACKGROUND

Petitioner, a Gambian national, has been detained by the United States Department of Homeland Security's Immigration and Customs Enforcement division at the Otay Mesa Detention Facility since August 19, 2025. Pet. at 3. In 2017, Petitioner was ordered removed to Gambia. Ret. at 2. On November 13, 2019, Petitioner was deported to Gambia, *id.*, where "he experienced several years of persecution," Pet. at 2. In late 2023, Petitioner fled Gambia and arrived in the United States without authorization. *Id.* On January 3, 2024, Petitioner was apprehended by U.S. Border Patrol near Lukeville, Arizona. Ret. at 2. On January 12, 2024, Petitioner was released on an order of supervision. *Id.* Petitioner "lived, studied, and worked in Los Angeles" for the next year and a half without issue. Pet. at 2. Petitioner worked as a security guard in Los Angeles, attended a public school for adult education seeking his GED, attended all his check-in appointments, and complied with all conditions of his supervised release. *Id.* On August 19, 2025, Petitioner was arrested at his ICE check-in appointment without notice or an informal interview. *Id.* at 3. At the time of his arrest, "[t]he ICE officer told him 'everything has changed, and . . . if you want to fight your case, you have to be inside.'" *Id.* Petitioner now argues that ICE did not comply with 8 C.F.R. § 241 or due process. *Id.*

## LEGAL STANDARD

A federal prisoner challenging the execution of his or her sentence, rather than the legality of the sentence itself, may file a petition for writ of habeas corpus in the district of his confinement pursuant to 28 U.S.C. § 2241. *See* 28 U.S.C. § 2241(a). The sole judicial body able to review challenges to final orders of deportation, exclusion, or removal is the court of appeals. *See generally* 8 U.S.C. § 1252; *see also Alvarez–Barajas v. Gonzales*, 418 F.3d 1050, 1052 (9th Cir. 2005) (citing REAL ID Act, Pub. L. No. 109-13, 119 Stat. 231, § 106(a)). However, for claims challenging ancillary or collateral issues arising independently from the removal process—for example, a claim of indefinite detention—federal habeas corpus jurisdiction remains in the district court. *Nadarajah v. Gonzales*, 443 F.3d 1069, 1076 (9th Cir. 2006), *abrogated on other grounds by Jennings v. Rodriguez*,

138 S. Ct. 830 (2018); *Alvarez v. Sessions*, 338 F. Supp. 3d 1042, 1048–49 (N.D. Cal. 2018) (citations omitted).

## DISCUSSION

When an alien has been found to be unlawfully present in the United States and a final order of removal has been entered, they must be detained for ninety days (90) pending the government's efforts to secure their removal. *See* 28 U.S.C. § 1231(a)(1). This ninety-day period is referred to as the "removal period." § 1231(a)(1)(A). After the removal period, this statute "limits an alien's post-removal-period detention to a period reasonably necessary to bring about that alien's removal from the United States" and "does not permit indefinite detention." *Zadvydas v. Davis*, 533 U.S. 678, 689 (2001). A six-month period of post-removal detention constitutes a "presumptively reasonable period of detention." *Id.* at 701. After this six-month period passes, the petitioner has the burden to "provide[] good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* If petitioner satisfies their initial burden, it then shifts to the Government to rebut that showing. *Id.* "[F]or detention to remain reasonable, as the period of prior post-removal confinement grows, what counts as the 'reasonably foreseeable future' conversely would have to shrink." *Id.* "[O]nce removal is no longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. In that case, the alien's release may be conditioned on any of the various forms of conditioned release, including an order of supervised release. *Id.* at 700.

Once ICE releases a non-citizen on supervised release, "ICE's ability to re-detain that noncitizen is constrained by its own regulations." *Nouri v. Herrera*, SA CV 25-1905-JFW(DBT), 2025 U.S. Dist. LEXIS 171809, at *11 (C.D. Cal. Sept. 3, 2025) (internal citation omitted). ICE may re-detain a non-citizen released on an Order of Supervision "if, on account of changed circumstances, [ICE] determines that there is a significant likelihood that the alien may be removed in the reasonably foreseeable future." 8 C.F.R. § 241.13(i)(2). ICE may also re-detain if the non-citizen "violates any of the conditions of release." § 241.13(i)(1). If ICE chooses to re-detain, the non-citizen must "be notified of

the reasons for revocation" and be afforded "an initial informal interview promptly after [his] return to . . . custody to afford the alien an opportunity to respond to the reasons for revocation stated in the notification." § 241.13(i)(3). The non-citizen may "submit any evidence or information that [he] believes shows there is no significant likelihood [he may] be removed in the reasonably foreseeable future, or that [he] has not violated the order of supervision." *Id.*

Here, Petitioner was ordered removed in 2017, removed to Gambia in 2019, and re-entered the United States in 2023. Pet. at 2. Petitioner was released on an Order of Supervision on January 12, 2024, presumably, because his removal was not foreseeable. Ret. at 2; *see Zadvydas*, 533 U.S. at 699–700 ("[I]f removal is not reasonably foreseeable, the court should hold continued detention unreasonable and no longer authorized by statute."). Petitioner was re-detained by ICE agents at his annual ICE check-in on August 19, 2025. Pet. at 3. Petitioner was not provided written notice (or any notice) for the reasons of his re-detention beyond a statement from the ICE officer that "everything has changed, and . . . if you want to fight your case, you have to be inside." *Id.*; *see also Tran v. Noem*, No. 25-cv-2391 BTM (BLM), 2025 WL 3005347, at *2 (S.D. Cal. Oct. 27, 2025) (holding that this "notice must be in writing and contain all the reasons for the revocation of the alien's release"); *see also Xayakesone v. Noem*, No. 25-cv-2995-JES-BJW, 2025 WL 3229102, at *4 (S.D. Cal. Nov. 19, 2025) (finding notice insufficient when it stated that the "decision has been made based on a review of your official alien file and a determination that there are changed circumstances in your case"); *Rokhifirooz v. Larose*, No. 25-cv-2053-RSH-VET, 2025 WL 2646165, at *4 (S.D. Cal. Sept. 15, 2025) (same).

Further, ICE agents did not conduct an interview after Petitioner's arrest, and in the four months Petitioner has been detained, no interview has been conducted. Pet. at 4–5. Petitioner, therefore, has not been provided with "an opportunity to respond to the reasons for revocation stated in the notification," 8 C.F.R. § 241.13(i)(3). "Petitioner must be told *what* circumstances had changed or *why* there was now a significant likelihood of removal

in order to meaningfully respond to the reasons and submit evidence in opposition." *Sarail A. v. Bondi*, ---- F. Supp. 3d ----, 2025 WL 2533673, at *10 (D. Minn. 2025).

"Government agencies are required to follow their own regulations." *Hoac v. Becerra*, No. 25-cv-1740-DC-JDP, 2025 WL 1993771, at *4 (E.D. Cal. July 16, 2025) (citing *United States ex rel. Accardi v. Shaughnessy*, 347 US. 260, 268 (1954)) (finding a likelihood of success where petitioner was not provided an informal interview). "[W]hen ICE fails to follow its own regulations in revoking release, the detention is unlawful, and the petitioner's release must be ordered." *Truong v. Noem*, No. 25-cv-2597-JES-MMP, 2025 WL 2988357, at *6 (S.D. Cal. Oct. 22, 2025) (collecting cases). The Court finds that, in violation of ICE's regulations, the revocation of his supervised release without notice or an informed interview justifies **GRANTING** the Petition. *See, e.g.*, *Hoac*, 2025 WL 1993771, at *4 (granting a TRO where ICE failed to follow § 241.13(i)(3) procedures); *Phakeokoth v. Noem*, No. 25-cv-2817 RBM (SBC), 2025 WL 3124341, at *6 (S.D. Cal. Nov. 7, 2025) (same); *Nouri*, 2025 U.S. Dist. LEXIS 171809, at *11 (same); *Tran*, 2025 WL 3005347, at *4 (granting a habeas petition on the same grounds); *Truong*, 2025 WL 2988357, at *6 (same); *Nguyen v. Noem*, No. 25-cv-2792 LL (VET), 2025 WL 3101979, at *3 (S.D. Cal. Nov. 6, 2025) (same).

Additionally, even if the procedural requirements were met, the Court is not persuaded that Respondents have shown a change in circumstances such that there is now a significant likelihood Petitioner will be removed in the reasonably foreseeable future. First, Petitioner has been subject to a final order of removal since January 2024, and in the last two years, there has been no progress on securing his removal. Traverse at 6.

Second, Respondents failed to secure travel documents, or alleged potential for travel documents, for Petitioner *before* his re-detention. Petitioner was released in 2024 because his removal was not reasonably foreseeable, *id.*, and Respondents present no evidence that this has changed. In fact, Petitioner was found to have a credible fear of return to Gambia in his September 15, 2025, interview with an asylum officer and his case

has since been referred to the Immigration Court for withholding-only proceedings. Ret. at 2.

Therefore, because Respondents have failed to follow their own regulations in re-detaining Petitioner and have failed to demonstrate that his removal is reasonably foreseeable, the Court **GRANTS** the Petition.

## CONCLUSION

Based on the foregoing, the Court **GRANTS** Petitioner's First Amended Petition for Writ of Habeas Corpus (ECF No. 5), and **ORDERS** Respondents to immediately release Petitioner from custody subject to the conditions of his preexisting Order of Supervision. The Court **ORDERS** that Respondents cannot re-detain Petitioner without following the procedures set out in 8 C.F.R. § 241.13(i) and other implementing regulations. The Parties are **ORDERED** to file a Joint Status Report by January 12, 2026, confirming that Petitioner has been released. The Clerk of Court **SHALL CLOSE** the file.

**IT IS SO ORDERED.**

Dated: January 6, 2026

Hon. Janis L. Sammartino
United States District Judge